# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

JUSTIN S.,

    Plaintiff,

vs.

FRANK BISIGNANO,
Acting Commissioner of Social Security,[1]

    Defendant.

No. 24-CV-0051-LTS-KEM

**REPORT AND RECOMMENDATION**

_____

Plaintiff Justin S. seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues the administrative law judge (ALJ) erred in denying benefits. Plaintiff asks the court to reverse the Commissioner's decision and award benefits. I recommend **affirming** the Commissioner's decision.

## I. BACKGROUND

This is the second appeal to this court of the Commissioner's denial of Plaintiff's application for DI benefits.[2] Plaintiff's application revolved around non-exertional limitations stemming from bipolar disorder, depression, anxiety, and unspecific psychosis. AR 13-15.[3] In October 2016, Plaintiff was hospitalized and his family obtained a court-ordered commitment. AR 246-62, 321-46. After his discharge from

---

[1] Substituted for the predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[2] The prior report and recommendation contains a discussion of the underlying facts. AR 626-38.

[3] "AR" refers to the administrative record filed in this case (Doc. 6).

the hospital, Plaintiff remained subject to outpatient commitment and received treatment from the Abbe Center and the University of Iowa Hospitals and Clinics. AR 240-45, 263-92, 347-53, 356-57, 368-69, 386-413, 427-44. Plaintiff was again hospitalized by commitment in the summer of 2019—twice in June to early July at St. Anthony Regional Hospital in Carroll, Iowa (AR 744-66), and once in July at the University of Iowa Hospital (AR 418-26). After these hospitalizations, Plaintiff continued with outpatient treatment at the Abbe Center and Unity Point Health. AR 445-87.

During Plaintiff's first appeal, the record contained records from Plaintiff's hospitalization in 2016 and from July 2019 at the University of Iowa and subsequent outpatient treatment; the hospitalization records at St. Anthony from June to July 2019 were added during remand. The record during the first appeal also included: disability reports (AR 186-94, 222-29, 295-302); function reports (AR 210-19, 230-39); a pain questionnaire (AR 206-09); and transcript from the ALJ hearing on June 11, 2020 (AR 30-62). This court remanded the case for additional proceedings, specifically for the ALJ to further consider Plaintiff's "bad periods" (particularly in 2019 and onward) and to develop the record to obtain missing treatment records. AR 495, 626-43. Plaintiff also filed a separate DI claim, which the Appeals Council remanded with instruction to follow this court's remand order and to combine the two files and issue a new opinion. AR 495, 647-48.

On remand, the Social Security Administration obtained additional records: a third-party questionnaire from Plaintiff's child; updates to Plaintiff's questionnaire; and additional treatment records from Plaintiff's hospitalizations at St. Anthony Regional Hospital, and treatment records from Mercy One Waterloo Medical Center/Wheaton Franciscan Healthcare-Waterloo and the Abbe Center. On the third-party questionnaire, dated August 16, 2023, Plaintiff's child indicated that Plaintiff only suffered issues when he voluntarily stopped taking his medications, pointed out that these periods were short in duration with long periods of Plaintiff doing well, and opined that Plaintiff was not

2

disabled. AR 709-11. Plaintiff reported on his updated questionnaire, dated August 29, 2023, that he had not worked since his hospitalization five year prior (in 2019). AR 727. He listed recent treatment in August 2022 and in February and August 2023 with Angie Morris, and noted "slight improvements" in his condition and that "meds work." AR 729. He listed his current medications as lithium and quetiapine[4] for depression and an acid reflux medication. AR 731.

The additional treatment records from the Abbe Center included the following:

- intake assessment on October 31, 2016 (following the 2016 hospitalization), by Janet Eimers, LISW (AR 786-88, 800);
- additional records for medication management by Douglas Jones, MD, and therapy by Nancy Muir, LISW, between November 22, 2016, and June 20, 2019 (AR 802-92, 860-61, 866-77);records for therapy by Shelly Blanchard, LMFT, between April 6, 2018, and July 5, 2018 (AR 852-59, 862-65);
- intake assessment by Evan Komen, ARNP, on May 8, 2020 (AR 797-99); and
- medication management by Angela Morris, ARNP, between July 28, 2020, and August 15, 2023 (beyond the date last insured) (AR 880-898).[5]

The additional records also covered Plaintiff's 2019 hospitalizations:

- from June 10 to 13 at St. Anthony Regional Hospital (AR 755-66);
- from June 28 to July 3 at St. Anthony Regional Hospital (AR 744-54); and
- from August 22 to 26 at Mercy One Waterloo Medical Center/Wheaton Franciscan Healthcare-Waterloo (AR 767-82).

---

[4] Seroquel.

[5] Some of these records were included in the original appeal: Dr. Jones's records from November 7 and 9, 2016; November 1, 2017; January 24, March 27, June 12, July 10, and July 24 in 2018 (AR 347-53, 357, 368-69, 429-33); Therapist Muir's records from February 7, March 6, April 17, May 29, and June 20 in 2019 (AR 433-44); July 5, 2018 records from Therapist Blanchard (AR 428-29); and all of the therapy records by Barbara Ruppel, LISW, from December 19, 2019 to January 10, 2020 (AR 445-50 – duplicated at AR 793-96, 878-79).

Treatment records show that Plaintiff began traveling south for periods sometime between June 2021 and April 2022, and planned to do so again from around December 2022 to March 2023. AR 887, 892. From 2020 forward, he was seen for medication management every four to ten months. AR 878-98.

ALJ John P. Mills, III, held a second administrative hearing on September 5, 2023, at which Plaintiff and a vocational expert testified. AR 495, 517-72. When the ALJ asked Plaintiff to stop filling out paperwork during the hearing, Plaintiff responded that he was capable of doing two or three different things at once. Numerous times during the hearing, Plaintiff responded to the ALJ's questions by saying he relied on his answers from the prior hearing in 2020.[6] At one point he questioned how he could trust the ALJ to review records in the case if the ALJ could not read the transcript from the prior hearing to know what was going on.

Plaintiff did provide information during the hearing. When asked how his mental health issues impacted his ability to work, he responded "[i]t's very difficult." AR 533. He testified he would wake up late, didn't do much, and slept 12 hours per day. He didn't believe he'd be able to consistently show up for work. When asked if he wanted to work, he responded he didn't know, and he was not sure if the stress of working would

---

[6] During the hearing on June 11, 2020, Plaintiff testified: he hadn't been very happy and that his marriage had fallen apart in the last couple of years; he and his wife were finalizing his divorce and he was estranged from his children; things had not gotten better and he felt his condition had progressively worsened; he had "pretty dark days" where he couldn't be around people or focus very well; he had bad days 2-3 times per week, where he felt like he needed to be away from people, he couldn't focus well, and he had very low energy; he occasionally had crying spells; despite treatment notes indicating his bipolar disorder was in partial remission and he was improving, he still had good days and bad days with more of them being bad; he still had bad days with medication, but it took the sadness away; he generally took his medication, and when he had forgotten to do so at times, he would notice feeling different and would then take the medication; and his medication made him sleep a lot (for 12 hours—he was rarely up before 10:30) and made him tired ("it kind of knocks you out"), but had no other side effects. AR 39-45, 47-52. At the time of that hearing, he testified "[his] medication [wa]s pretty well set." AR 52.

4

be too much for him. He testified he went to the grocery store three times per week, he was able to take care of himself and his residence (an RV), and he watched television, read, and once a week spent time outside. He did not talk to his children, and he did not like to socialize by choice.

Since 2020, Plaintiff has received treatment at the Abbe Center (nowhere else). He was seen every six months, reporting the providers were extremely busy.[7] He testified he once asked to be seen more often but the providers were too busy; he did not seek treatment elsewhere. During discussion about Plaintiff's hospitalizations in 2016 and in 2019, he testified he was having marital issues in both years that contributed greatly to him being hospitalized. Plaintiff acknowledged he had not been hospitalized since 2019. When asked about his medications over the past few years, Plaintiff said they had been adjusted (decreased) and that this had been helpful, but he still slept a lot. When later asked about his medications since June 2020 stabilizing his psychosis, he responded "[w]hat I'm on works," and that he sleeps well and his "mind didn't race as bad." AR 551. He had been on these medications (lithium and quetiapine) since his hospitalization at the University of Iowa Hospital in August 2019.

The ALJ issued a written opinion following the five-step process outlined in the regulations[8] on January 8, 2024, for the relevant period from October 15, 2016 (alleged onset date), to September 30, 2022 (date last insured). AR 495-510. The ALJ found that Plaintiff suffered from severe impairments of bipolar, depressive, and anxiety

---

[7] Treatment records since August 2020 show periods of four to ten months between visits. AR 878-98.

[8] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* **§ 404.1520(a)(4)**. The claimant bears the burden of persuasion to prove disability. *Goff*, 421 F.3d at 790.

5

disorders, but these impairments did not meet or equal a listing. AR 498-501. The ALJ found Plaintiff had the RFC[9] to perform work at all exertional levels[10] with the following non-exertional limitations:

> [Plaintiff] was limited to understanding and remembering simple instructions, limited to the performance of simple and routine tasks, and limited to simple work-related decisions. He was limited to occasional interaction with coworkers, supervisors, and the general public. [He] was limited to tolerating only occasional changes in a routine work setting.

AR 501. The ALJ found Plaintiff could not perform any past relevant work. AR 508. The ALJ found that based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other work as a shower attendant, lab equipment cleaner, and laundry worker. AR 508-09. Thus, the ALJ found Plaintiff not disabled during the relevant period. AR 509.

The decision by ALJ Miller, covering both of Plaintiff's DI claims, is the final decision of the Commissioner.[11] Plaintiff filed a complaint in this court on May 30, 2024 (Docs. 1-3, 493).[12] The parties briefed the issues (Docs. 11, 13) and the Honorable

---

[9] Residual functional capacity (RFC) means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 404.1545(a)(1)**).

[10] Plaintiff alleged physical issues due to back pain, but does not challenge the ALJ's finding that he could perform a full range of exertional work.

[11] *See* **42 U.S.C. § 405(g)**; **20 C.F.R. § 404.984(d)** (when a case has previously been remanded from federal court, the ALJ decision becomes final when the claimant does not file written exceptions to the Appeals Council within 30 days and the Appeals Council does not assume jurisdiction within sixty days).

[12] *See* **20 C.F.R. § 422.210(c)**. The court need not address the timeliness of Plaintiff's complaint, as the Commissioner does not raise the issue. *See Bowen v. City of New York*, 476 U.S. 467, 478 (1986) ("[T]he 60-day requirement [in § 405(g)] is not jurisdictional, but rather constitutes a period of limitations."); *Gionfriddo v. Commissioner of Soc. Sec.*, 475 F. App'x 732 (11th Cir. 2012) (holding that a court may not dismiss a Social Security complaint sua sponte for untimeliness, as untimeliness is an affirmative defense that may be waived by the Commissioner).

Leonard T. Strand, Judge for the Northern District of Iowa, referred this case to me for a report and recommendation.

## II. DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[13] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[14] The court "do[es] not reweigh the evidence or review the factual record de novo."[15] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[16]

Plaintiff argues the ALJ erred in considering Plaintiff's subjective complaints about the severity of his symptoms. Plaintiff also argues the ALJ failed to consider Plaintiff's bad periods and that the ALJ's opinion is not supported by substantial evidence.

### A. Subjective Complaints

When evaluating a claimant's subjective complaints, "the ALJ must consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions."[17] The ALJ may give less weight to subjective

---

[13] *Grindley*, 9 F.4th at 627; *accord* **42 U.S.C. § 405(g)**.

[14] *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

[15] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

[16] *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

[17] *Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024) (quoting *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000)); *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*,

7

complaints that are inconsistent with the evidence as a whole, including the claimant's treatment history and daily activities.[18] Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'"[19]

Here, the ALJ summarized Plaintiff's subjective complaints from his April 2018 function report and his hearing testimony. AR 502. The ALJ found Plaintiff's statements were not fully consistent with his testimony that he had been stable since 2020, his daily activities, and the medical evidence. AR 502-06, 508. The record supports the ALJ's conclusions. Plaintiff was not hospitalized after August 2019. At a visit in September 2019 to establish care following that hospitalization, Plaintiff felt he was doing okay, and the treatment notes list his bipolar disorder was in partial remission. AR 451, 461. Since that time, he continued on the same medications (lithium and quetiapine). AR 460, 471, 483, 769, 880-98; *see also* AR 469, 471, 880, 882 (tapered off morning dose of quetiapine in November 2019 after reporting being tired; denied medication side effects after that).

The records also show that Plaintiff continued to do well overall, and he saw providers less often over time. AR 469-70 (November 8, 2019: reported things were okay after moving into apartment and working to finalize divorce), 481-83 (February 19, 2020: guarded and irritable but provider noted bipolar symptoms improving and Plaintiff reported "everything is just fine"), 880 (July 28, 2020: reported sleeping well, good mood, being very controlled, and he felt good with how things were going; provider

---

476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986). The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. **Jones v. Callahan**, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

[18] ***Id.***

[19] **Schultz v. Astrue**, 479 F.3d 979, 983 (8th Cir. 2007) (quoting **Hogan v. Apfel**, 239 F.3d 958, 962 (8th Cir. 2001)); *see also **Ross***, 92 F.4th at 779.

noted Plaintiff was stable), 882 (November 24, 2020: reported medications working well and having really good sleep with medication), 884 (June 8, 2021: reported "fine" mood and felt medications were working well, although upset with his parents about "mess[ing] up his committal"), 887-88 (April 22, 2022: Plaintiff had traveled south for pleasure but planned to stay in Iowa for the summer; reported stable on medications, being blah on stormy days but overall pretty good; asked to stay on same medications because felt he was stable).[20] Though he had times with more ups and downs, they were relatively minor (no treatment changes were made) and appear tied to life stressors (finalizing his divorce and his outpatient committal). AR 445-46 (December 18, 2019: had been more manic that week with more ups and down; in the middle of contentious divorce), 449 (January 10, 2020: reported stress in past two weeks, finalizing divorce), 797 (May 8, 2020: reported feeling down, low energy, excessive worrying, and panic attacks; noted recent divorce and strain of living condition). His provider indicated in June 2021 that she would like to discontinue his committal. AR 884. As noted in the background section, Plaintiff testified he had done well overall since 2020.

I recommend finding the ALJ did not err in evaluating Plaintiff's subjective complaints.

### B. *Substantial Evidence*

On the prior appeal, this court found that the ALJ relied too heavily on Plaintiff's good periods, that substantial evidence did not support the ALJ's opinion, and that the ALJ needed to further develop the record to obtain missing treatment records. AR 635-

---

[20] Records from three visits after Plaintiff's date last insured show he continued to do well with the same medications. AR 891-92 (November 7, 2022: reported good sleep and mood, felt medications were working, felt he was stable, had no concerns; getting ready to go south for the winter), 894-95 (March 29, 2023: reported doing well, good mood and anxiety with no concerns, sleeping well), 897-98 (August 15, 2023: doing good, no concerns).

38, 642.  On remand, the ALJ obtained additional treatment records and updated information from Plaintiff.  The ALJ thoroughly discussed all of the evidence in the record.  AR 502-08.  The ALJ recognized the severity of Plaintiff's condition from 2016 and 2019 (including committals and hospitalizations), but noted they were "related to significant life stressors" and limited in duration.  AR 502-06.  Plaintiff acknowledged this during the second administrative hearing (on remand, in September 2023).  AR 557-58.

The additional records obtained on remand include treatment records covering the period from November 2016 to November 2017.  These records show both improvement following his 2016 hospitalization (AR 802-05, 807, 811, 821-22, 825-36, 839, 841, 845) and continuing issues, such as depression, low energy, difficulty concentrating, and some suicidal ideation without plans (AR 809, 815-19, 823, 831, 837, 840, 843-44).  Plaintiff had medication compliance issues or changes in medication during the times continued issues were noted.  AR 809, 813, 819, 836, 843-45.  Records from 2018 to 2019 show that Plaintiff suffered from low mood and depression, anxiety, suicidal ideation, hallucinations, isolating behavior, irritability, and mania.  AR 848-75.  In March 2018, a provider noted Plaintiff suffered hallucinations and vague, psychotic symptoms, but did not meet criteria for schizoaffective disorder.  AR 851.  A treatment record from April 2018 shows that Plaintiff needed to restart therapy after taking a break (apparently since November 2017).  AR 845-46, 853.  A July 2018 record noted increased bipolar behaviors (episodes of mania and depression).  AR 378.  Plaintiff suffered a manic episode around early February 2019, but had improved with medication change by March 2019.  AR 433, 437.  Additional records from April, May, and June 2018 (obtained on remand) show Plaintiff suffered from anxiousness, depression, suicidal ideation, and isolating behaviors.  AR 854-61.  He continued to have issues in 2018 and 2019 (AR 427-32, 439, 441, 443) and was hospitalized three times that summer:  from June 10-13 (AR 755-66), June 28-July 3 (AR 744-54), and August 22-26 (AR 767-82).  As discussed

in the prior section, Plaintiff improved after that time and required no further hospitalizations. Since that time, his medications remained the same (lithium and quietiapine, with some adjustments in dosages—most recently a decrease). AR 551-54. The treatment records support the ALJ's conclusion.

Plaintiff's testimony from his second administrative hearing further supports the ALJ's findings. Plaintiff testified that the difficulties caused by his mental health issues had not changed since 2020, and that he would not be able to show up for work on a consistent basis, elaborating that he woke late and slept a lot. AR 533, 536-37, 562. He also testified, though, that he did not have problems being around people, but he chose to spend time alone. AR 560. He was not certain if he wanted to work, or he wasn't certain if trying to work would be too much at that point in time. AR 563, 565-66. Plaintiff acknowledged that he had been stable since 2020 and that his medication improved his symptoms without any side effects. AR 551. The only place he had received treatment since 2020 was at the Abbe Center. AR 524, 538-39 (asked to see provider more often but never sought treatment elsewhere), 540 (seen for medication management).

I recommend finding the ALJ, on remand, fully considered the entire record, including Plaintiff's good periods and bad periods, and that substantial evidence supports the ALJ's decision.

### III. CONCLUSION

I recommend **affirming** the decision of the Social Security Administration.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the

objections.[21] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[22]

**DATED** May 28, 2025.

*Kelly K.E. Mahoney*
Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[21] **Fed. R. Civ. P. 72**.

[22] *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).